Mr. Ward, are you with us? Yes. And Mr. Grant? Yes, I'm here. Very good. 20-3034 from the Western District of Missouri, Timothy Stockton v. EaglePicher Technologies, et al. Mr. Ward, you may proceed. May it please the court. Counsel, good afternoon. My name is Mike Ward. I'm present on behalf of the appellant, the plaintiff intervener, Timothy Stockton. The question presented by this appeal is a narrow one, whether or not the district court erred in dismissing Mr. Stockton's intervention complaint for want of standing. It's our position, of course, that the district court erred in so ruling. The question of standing is whether or not the intervener, the parties seeking to intervene, has some actual or threatened injury that needs to vindicate in the case, the pending case. And the standard to establish standing is by the preponderance of the evidence. Is it more probably true than not true that the party seeking to intervene has standing to bring the claim? And in this case, based on the preponderance of the evidence standard, based on the entire record before the district court, Mr. Stockton had standing to intervene in this action. It was error to dismiss him for want of standing. It's been long held by the courts, including the United States Supreme Court, that an S&E for collections has standing as permitted to intervene. In our brief, we cited the sprint communications case versus APCC services case. And that very clear holding of the U.S. Supreme Court in that case is that an S&E for collections has the right to intervene, has standing to bring a claim. The fact that the predicate for standing by Mr. Stockton is in the stock purchase agreement that he entered into for the sale of his company, Sertan Communications, Sertan Software, under the stock purchase agreement, there is section 6.16 that gives Mr. Stockton the uncritical right to pursue... You said unequivocal or some such word, I heard you say. And when I look at this, I was candidly surprised when I got the three or four pages here that are in the record. You know, all this blacked out stuff all around it. And especially where the next page says conditions to obligations. Conditions and all this stuff and this bare bones. I just think that probably the district court thought that you hadn't begun to give them enough to even tell what was going on here. And you're hiding not just the balls, but the whole game. No, Your Honor, there was no intent to hide the ball before the district court. With respect to the stock purchase agreement, it unequivocally says that without further action of the company, that Mr. Stockton has the right to collect and receive the debt owed by Eagle Picture for the services that have been previously provided. Counsel, what's the next page say? You're talking about the seller, right? The seller getting the rights? Yes, the seller. That's Mr. Stockton. Yeah, you're right. That's what I thought. He's defined as the seller under the agreement. Correct. That's what I thought and I wanted to be sure before I said my next sentence, which is, question, which is, the next page says conditions and it's all blown out. How do we know that one of those doesn't say you can't do it? Based on the plain language of Section 6.16. And with respect to the record before the district court, there's the declaration, Your Honor, of Ken Sigmund, which is at page 118 of the appendix. And Mr. Sigmund, and there's a larger portion of the stock purchase agreement that is attached to Mr. Sigmund's declaration, 22 pages actually of the SPA. And he says this is a true and accurate copy of the SPA, although it's redacted as the redacted copy that was attached to the motion to intervene and also to the complaint and intervention. And he testifies under oath in paragraph six of this declaration that, and I'll read it to the court at page 118 of the appendix. During its due diligence when Scient purchased certain software, Scient analyzed certain software's account receivable for Eagle Pitcher Technologies and determined that it did not want to pursue recovering this debt post-acquisition. Rather, Scient and Stockton negotiated that as part of the compensation to Stockton for the purchase of Certan software, certain software would assign the EP debt to Stockton so Stockton could personally pursue the recovery. That's a statement under oath by Mr. Sigmund, who is the associate vice president of Scient, who was the purchaser of Certan. He's stating under oath that as part of the stock purchase agreement, it was understood and agreed that Mr. Stockton, as part of the compensation for the sale of the business, would have the right to pursue the accounts receivable from Eagle Pitcher. Let me interrupt you again. This is Missouri law, right? Yes, your honor. So a statement after a contract sign can't vary what it means, huh? No, the contract, obviously the declaration is descriptive of the contract. The contract would control, your honor, that's correct. Okay, thank you. I'm not saying that the declaration deviates or modifies the contract. The contract is what it is. And so the important point of Mr. Sigmund's declaration, and there's also in the record at page 155 of the appendix, Mr. Stockton's declaration, there's no dispute that there was a right, an assignment to Mr. Stockton to pursue the claim against Eagle Pitcher. There's no dispute. Mr. Ward, isn't the question, though, whether the assignment was effective at the time he tried to intervene, isn't that the key question? Your honor, in part, it's a question that's implicit in the case. Let me finish, because why isn't it a reasonable argument that it was not in effect because by suing in the name of Scient, he was using a commercially unreasonable method, which was a violation of the contract. And by suing under the name Scient, he ended up buying a counterclaim, which caused harm to Scient, which was also a violation of the assignment. So what's wrong with that argument to say that at the time he tried to intervene, the assignment was no longer effective? Your honor, the question, it was Serton, under which name he was originally sued. It was under Serton, the corporation that he sold to Scient, that he originally brought the lawsuit. There was a dispute over his authority to bring the claim or not. It could not be resolved. And then he then proceeded under the assignment provision. And in fact, based on the arguments made by Eagle Pitcher, there's the argument that either Serton had the claim or Mr. Stockton had the claim. The assignment provision gives Mr. Stockton the claim. It was with respect to the question about whether or not the conduct of Mr. Stockton in originally suing in the name of Serton breached the assignment provision, breached the stock purchase agreement, goes to the merits of his right to recover. But it does not defeat the very narrow question of whether or not he has an assignment. He has an assignment to bring the claim. If there are defenses ultimately to the merits of his claim, that would go to whether or not he breached the stock purchase agreement or there are defenses that are available under the agreement. But the very narrow question of standing, did he have standing to bring the claim, it's clear under Section 6.16 that he did have standing to bring the claim. Counsel, doesn't the very fact that the original action was not brought in his name and Mr. Stockton's name, notwithstanding the fact that this assignment language had already been agreed upon and executed, doesn't the very fact that it was not brought in his name, doesn't that indicate that there was some problem, there's some issue, that for some reason the assignment was not effective? Because as I read the assignment, it says the company shall automatically, without any further action by the company assigned to seller upon closing. So if that took place, the fact that the lawsuit originally was brought not in Mr. Stockton's name but in Serton's name, doesn't that indicate that at least there's some issue with the effectiveness of the assignment? No, Your Honor, the assignment speaks for itself. In terms of what was done before the attempt to substitute parties plaintiff or motion to intervene may have been a mistaken strategy by the former counsel for Mr. Stockton who filed the original complaint in the name of Serton Software. But that conduct itself is without prejudice to the actual terms of the Stock Purchase Agreement which does assign the rights to Mr. Stockton without further action of the company, that he has the right to pursue the accounts receivable based on the debt owed by Eagle Pitcher. What has happened here is that Eagle Pitcher who is a stranger to the Stock Purchase Agreement is trying to use terms of the Stock Purchase Agreement to defeat the assignment, the rights under assignment that Mr. Stockton has. Now, I would admit in hindsight, I wish that the entire agreement was before the court. Again, I believe another mistake was made in how this case was handled and that the entire agreement was not before the court. I have to be perfectly frank to the court that I wish personally that the entire agreement was before the court but it's not. At the time, perhaps the strategy by Mr. Serton Counsel made sense that Eagle Pitcher was a stranger to the agreement, that the agreement was only between Serton and Mr. Stockton, that there was a confidentiality provision in the agreement that's part of the record and in terms of the narrowest aspect of the agreement was produced and used in support of the assignment. Further, at the time the district court ruled on Eagle Pitcher's motion to dismiss for want of standing, there was a discovery dispute pending. In discovery, the entire agreement had not been produced. There was an objection made by Mr. Stockton. Eagle Pitcher called the objection. There was a conference with the court where it was argued the merits of the objection or not, but the district court rather than addressing the merits of the discovery dispute which would have disposed of the issue whether or not the entire agreement should have been produced or not, the court ruled on the standing question. In essence, the court put the cart before the horse that what has happened here is really by Eagle Pitcher is a factual attack on the standing and really on the merits of the assignment and as guided by the Osborne versus Sullivan decision that in terms where there's a factual attack, it would have been appropriate for there to be an evidentiary hearing to address the factual issues presented. In fact, that's what Eagle Pitcher directed the court to page 196 of the appendix that during the pendency of the motion to dismiss, there was a request by Eagle Pitcher to postpone filing an answer to the complaint and intervention pending its motion to dismiss or the alternative and evidentiary hearing on the question of Mr. Stockton's standing. And so the court without addressing the discovery question whether or not the entire agreement should have been produced, whether or not the objection was proper, dismissed the case for want of standing. Based on Mr. Lindstrom's declaration and Mr. Stockton's declaration that there is no question that there wasn't an assignment and that the assignment is what gives standing. Now, if there's a defense to Mr. Stockton's claim based on a breach of the agreement or so forth, that would be a merits determination down the road as the case is litigated. But on the very narrow question before the court, was there standing and based on the evidence standards, more probably true or not, when the court may consider the facts that are apparent from the pleadings, which include the corporation by reference of section 6.16, and then the record including the declarations that show there was an assignment, confirm the contract terms. On that very narrow question of whether or not there was standing or not, Mr. Stockton met his burden to establish that he had an assignment, that he had a right to pursue recovery from Eagle Pitcher. And for those reasons, I respectfully request the court to reverse the district court's judgment and to remand this matter back to the district court for further proceedings. Thank you. Thank you, Mr. Ward. The court will hear from Mr. Grant. Good afternoon, Your Honors. May it please the court. Cameron Grant for Appley Eagle Pitcher Technologies LLC. Your Honors, I disagree slightly with Mr. Ward's statement of the issue that's before the court. Mr. Ward stated a few moments ago that the issue is whether Mr. Stockton had standing to intervene. That's not correct. Intervention is governed by Rule 24. The issue before the court is whether or not Mr. Stockton satisfied his evidentiary burden to prove his standing by preponderance of the evidence in opposition or in response to Eagle Pitcher's motion to dismiss. Now, we do actually— Counsel, let me interrupt you on that point. The ruling on the motion to intervene must be wrong. Isn't the standing the same at all relevant times here? The district court appeared to acknowledge that, by the way, didn't they, in a footnote in another statement? Your Honor, I think what the district court said in that footnote that you're referring to is that the court possibly should have ascertained or determined Stockton's standing when it granted him leave to intervene. However, I do think the standards are different. So the standard for Rule 24 motion is that somebody who claims an interest relating to the property of transaction may intervene if disposing of the action may, as a practical matter, impair his or her interests. And there are a couple important caveats. One is that the rule is construed liberally, and all doubts are resolved in favor of the proposed intervener. And second of all, intervention will only be denied if the allegations are frivolous on their face. That's not true when somebody is responding to a factual attack on their standing. Where there's a 12B1 motion to dismiss based on lack of standing, it is the plaintiff has the burden to prove his or her standing by a preponderance of the evidence without the benefit of any inferences in his favor with the manner and degree of evidence required at the successive stages of the litigation. I think that's, in fact, a higher burden. And one thing the court did note in the ruling on the motion to intervene was that Stockton didn't comply with the rules and that he failed to attach his proposed intervener complaint to his motion. So the court, in its discretion, again, on the motion to intervene, overlooked that as kind of a technical irregularity. I think maybe the better course would have been for the district court to have required Mr. Stockton to attach his intervener complaint to the motion, at which point his standing could have been resolved at that stage. But I think the way the litigation played out, the district court permitted Mr. Stockton to intervene based on Rule 24. And then after Mr. Stockton filed his intervener complaint, Eagle Pitcher moved to dismiss that complaint for lack of standing pursuant to FRCP 12B1. And so that, again, triggered Mr. Stockton's evidentiary burden to prove his standing by a preponderance of the evidence without the benefit of any inferences in his favor with the manner and degree of evidence required at the stage of the litigation. When Eagle Pitcher moved to dismiss Mr. Stockton's intervener complaint on May 8, 2020, this case was set for trial. It was set for trial for January 4, 2021. That's in the appendix at page 15. It's docket entry 113. So that means that in response to Eagle Pitcher's motion, Mr. Stockton had the burden to prove his standing with the manner and degree of evidence that would be required at a trial of a civil action. And so that begs the question, did Mr. Stockton satisfy that evidentiary burden? He did not, and therefore, the district court's oral judgment should be affirmed. As your honors are aware, the only evidence in the record, and I use that term loosely, is the four-page, heavily redacted, excerpted copy of this purported stock purchase agreement. I think the first basis upon which the district court's order can and should be— But wasn't there—Mr. Grant, wasn't there also an email chain between Mr. Stockton and some scient employees indicating that the deal had closed and therefore one could assume the assignment was effective? Well, there was an email chain, but I will say that that was not on this motion. The appendix includes material from Mr. Stockton's motion to substitute himself or intervene. Mr. Stockton, in response to Eagle Pitcher's motion and its attack on his standing, did not refer back to those prior materials. But even if we assume that those are properly part of the record, there has to be some foundational evidentiary basis to admit even the excerpt of the stock purchase agreement. There is simply none of that in the record. And again, the type of evidence that's required is the type of evidence that would be required at a civil trial. Your honors, we don't have an affidavit. We don't have deposition transcript testimony. We certainly don't have live testimony. The stock purchase agreement that is at issue was attached to Mr. Stockton's counsel's suggestions in support of his motion to intervene. It's not attached to an affidavit of Mr. Stockton. Your honors, there is no evidentiary basis to admit the stock purchase agreement into evidence. The district court's order may be affirmed on that basis and that basis alone. And Mr. Stockton made an interesting point at point B of his reply. In our appellee's brief, we cited the cases stating or holding that documents attached to an affidavit of an attorney are inadmissible. Mr. Stockton came back on a reply and he said, but those cases were from the Rule 56 summary judgment context. He said, you didn't make a motion pursuant to Rule 56. You made a motion pursuant to Rule 12B1. But your honors, based on the principles that I just stated, if anything, Mr. Stockton's evidentiary burden in response to our motion was greater than it would have been on a motion for summary judgment because this case was set for trial. And I think one way you can think about this appeal is just pretend that this appeal is one from a motion that granted Eagle Pitcher summary judgment and dismissed Mr. Stockton's intervener complaint. And imagine that if in response to that motion, Eagle Pitcher made a prima facie case and the only thing on the record before the court is just this bare four page excerpt of a document not attached to anything without any foundational testimony. I don't think this court would have any problem in that context affirming a grant of summary judgment and saying that Mr. Stockton didn't satisfy his burden to raise a tribal issue of fact with admissible evidence. And if I'm right about that, and I think I am, then necessarily Mr. Stockton also did not satisfy his burden to establish his standing. So, again, I think that's a straightforward, easy basis to affirm this report's order that Mr. Stockton did not submit any admissible evidence in response to Eagle Pitcher's attack on his standing. Therefore, affirmance is required. Now, my second point is that— Now, let me stop you for a second because you say there's absolutely none. I hear you say absolutely no evidence. Now, tell me how you get around Mr. Sigmund's affidavit attaching the stock purchase agreement? Yes, well, Your Honor, I will say, first of all, that today is the first time I have ever heard Mr. Stockton argue that he can rely upon the Sigmund affidavit to establish the admissibility of the stock purchase agreement. The word Sigmund does not appear in any of Mr. Stockton's briefs. It does not appear in his opposition to the motion before the district court. So I think it's a little bit late for Mr. Stockton to argue for the first time during argument on the appeal that he can somehow rely upon Mr. Sigmund's affidavit, especially where he didn't reference that at all in the district court. But, second of all, if we want to talk about Mr. Sigmund's affidavit, then that's fine. I don't think Mr. Sigmund established the admissibility of the stock purchase agreement based on the business record exceptions of hearsay rule. He doesn't talk about science business practices, what their record keeping practices are. He doesn't say that this document was regularly made or maintained in the course of science business or any of the other factors that would be necessary to admit this document under the business records exception to the hearsay rule. But let's take Mr. Sigmund's affidavit at its face. What he said in that affidavit in opposing Mr. Stockton's motion to intervene is that Mr. Stockton violated the terms of the assignment. He says that Mr. Stockton commenced this case without permission, not in his own name, but rather in Sirton's name. And in doing so, he engaged in commercially unreasonable practices and he exposed Sirton and therefore Scient to harm. And Judge Bitton, as you noted, the stock purchase agreement in the assignment is not unequivocal. It is conditional. The stock purchase agreement assigns to Stockton this receivable quote provided Stockton must utilize commercially reasonable practices in such collection efforts and shall in no event cause any harm, including reputational harm to Sirton or detract or interfere with Stockton's duties pursuant to the seller employment agreement. So your honors, again, the only record, the only evidence before the court on this issue is that Stockton violated those conditions. And if you look at page 44 of the record, that is Sirton's prior counsel's motion to withdraw his counsel. He explains in support of that motion that a dispute arose between Stockton and Scient regarding the litigation and that in conjunction with that dispute on April 16, 2019, Stockton separated from employment and thereafter they took adverse positions. And then again, you have the Ken Sigmund Declaration, which says that by proceeding in the way that he did, Stockton did exactly what he promised not to do. He caused Sirton to become subject to a multimillion dollar counterclaim and it interfered with his duties to the extent that Scient terminated his employment. So if you want to look at the Sigmund Declaration and take that as evidence and take that as legitimate opposition to Eagle Pitcher's motion to dismiss, even though Stockton never mentioned that in the district court, the only evidence in the record is that Mr. Stockton violated the terms of the assignment. And in response, there is nothing by Mr. Stockton. Again, these are all arguments that Eagle Pitcher made in its original moving papers in support of its motion to dismiss. Mr. Stockton had every opportunity to submit an affidavit. He could have submitted the entire stock purchase agreement. And I frankly don't have very much sympathy for Mr. Stockton or Mr. Ward's comment that he regrets the entire agreement is not in the record because Eagle Pitcher was trying to get the entire agreement. And Mr. Ward is correct that on July 22, 2020, there was a conference in the district court before Judge Wimes because Eagle Pitcher had requested the entire agreement and Mr. Stockton refused to provide it. So, again, I don't have much sympathy for Mr. Stockton that the entire agreement is not on the record. You're absolutely correct, Judge Ben, that there are many, many provisions of the agreement that we don't have that potentially bear on Mr. Stockton's standing. One of them that I'll point out is that, again, the assignment was not immediate. In addition to being conditional, it was effective as of the closing date. The closing date is a defined term in the stock purchase agreement, but we don't have it. We don't know what it is. And so you kind of have to question if Mr. Stockton believed that this claim was automatically assigned to him, that he owned it, that he complied with all the conditions of the assignment, why did he commence this action in Serton's name? That's not anything Eagle Pitcher did. That is what Mr. Stockton did. And, Your Honors, I think if you look at the way that Mr. Stockton opposed Eagle Pitcher's motion in the district court, it's in the record at pages 205 to 210. Mr. Stockton did not attempt to prove his standing. His position in the district court was, I don't have to prove my standing. He said, Your Honor, you already decided that I have standing. And so I'll speak to that briefly. I think that the issue is a little bit distracting because the issue before the court now is whether Mr. Stockton proved his standing by preponderance of the evidence. But going back to that prior decision on the intervention motion, again, Rule 24 is to be construed liberally. He's entitled to all these favorable inferences that he's not in response to standing. But second of all, the district court denied his motion to substitute himself as plaintiff pursuant to Federal Rule Civil Procedure 25 because the court could not determine the validity or scope of the assignment. And again, Your Honors, Mr. Stockton was aware of this. We pointed this out in our moving papers. But rather than come forward with additional evidence, Mr. Stockton made the decision to rest and rely upon what he had already submitted and what the court had already determined was insufficient to establish his right to substitute himself as plaintiff. Now, as to Federal Rule Civil Procedure 24 and the intervention, this is what the district court said. The district court said, if Stockton is the real party in interest for the claim against EPT by operation of the assignment, resolution of the claims against EPT without Stockton's involvement in this case could bar Stockton's recovery against EPT. Your Honors, that's a big if. If Stockton is the real party in interest, when EGLE Pitcher then moved to dismiss his intervener complaint, it was incumbent upon him to prove his standing by a preponderance of the evidence. He didn't do that. He relied back upon the same four-page, excerpted, redacted stock purchase agreement that the district court had already found inconclusive. In the absence of additional evidence by Stockton, the district court was absolutely correct to grant EGLE Pitcher's motion to dismiss and its order and judgment should be affirmed. Thank you, Your Honors. Thank you, Mr. Grant. Mr. Ward, you have a little bit of rebuttal time. May it please the court, counsel. The question is whether or not Mr. Stockton had standing, not whether he could prevail against EGLE Pitcher. The Sprint case decided by the U.S. Supreme Court makes clear that an assignee has standing to pursue a debt. Section 6.16 of the stock purchase agreement confirms that right of assignment. Mr. Lindstrom's declaration confirms that assignment, and so does Mr. Stockton's declaration. The fact that EGLE Pitcher may have defenses that would be proved on the merits does not defeat the question of standing. If EGLE Pitcher is correct, the court would be engaged in litigating the merits of a case to decide the standing question. In this case, that burden of proof was sustained, and more probably not that Mr. Stockton had standing, and therefore we request the court to reverse the district court's judgment dismissing Mr. Stockton's complaint. Thank you. Thank you, counsel. The court appreciates your briefing and your argument and appearance today. The case is submitted and we will decide it in due course. Thank you. Thank you, your honor. Thank you, your honor. You're welcome.